IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tommy L. Woodward,<br><br>                       Plaintiff,<br><br>v.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>                       Defendant.<br>_____ | C/A No. 0:10-1839-RMG-PJG<br><br><br><br>**REPORT AND RECOMMENDATION** |

      This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Tommy L. Woodward ("Woodward"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

      In November 2006, Woodward applied for SSI and DIB. Woodward's applications were denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 30, 2009 at which Woodward appeared and testified and was represented by F. G. Delleney, Jr., Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated September 23, 2009 finding that Woodward was not disabled. (Tr. 10-21.)

Woodward was born in 1957 and was fifty-one years old at the time of the ALJ's decision. (Tr. 18, 184.) He has a high school education and past relevant work experience as a loader driver, truck driver, fire hose manufacturer, warehouse worker, and truck loader. (Tr. 18, 196, 214.) Woodward alleges disability since November 21, 2002[1] due to a back and neck injury, leg problems, and sleep problems. (Tr. 190.)

The ALJ made the following findings and conclusions:

1. The claimant met the disability insured status requirements of the Act on November 21, 2002, the alleged date of disability onset, and continues to meet them through the date of this decision.

2. There is no evidence in the record that the claimant has engaged in any substantial gainful activity since the alleged date of disability onset.

3. The medical evidence establishes that the claimant has "severe" status post cervical fusion with residuals, including pain and left upper extremity radiculopathy, hypertension and lower extremity swelling, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.

4. For the reasons listed in the body of this decision, the claimant has failed to meet his burden of establishing that he has any other "severe" impairment.

5. For the reasons discussed in the body of this decision, the testimony regarding the severity of the claimant's impairments and resulting functional limitations was not persuasive, at least to the degree of severity alleged.

6. The claimant retains the residual functional capacity to perform "light" work subject to the additional limitations discussed in the body of this decision.

7. The claimant is unable to perform his past relevant work.

---

[1] Woodward filed a previous application for disability benefits in October 2003 alleging disability as of November 21, 2002. The ALJ issued an order denying this application on October 16, 2006. (Tr. 10, 24.) Woodward did not appeal the ALJ's decision. Therefore, although Woodward alleged disability since November 21, 2002 in this application, the ALJ found that *res judicata* applied with regard to the period through October 16, 2006. This determination has not been challenged on appeal.

    8.      As of October 28, 2007, the claimant was "approaching advanced age". Prior to that date he was a "younger individual". He has a high school education.

    9.      Based on an exertional capacity for "light" work, and the claimant's age, education, and work experience, section 404.1569 and Rules 202.14 and 202.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled".

    10.      Although the claimant is unable to perform the full range of "light" work, he is capable of making the adjustment to work which exists in significant numbers in the national economy. Such work includes employment as a security guard, a gate guard and a sorter. A finding of not "disabled" is therefore reached within the framework of the above cited Rules in conjunction with the testimony of the vocational expert at the hearing.

    11.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision 20 CFR 404.1520(f).

(Tr. 20-21.)

On May 12, 2010, the Appeals Council denied Woodward's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

    (1)    whether the claimant is engaged in substantial gainful activity;

    (2)    whether the claimant has a "severe" impairment;



(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's



decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Woodward raises the following issues for this judicial review:

1. The ALJ's decision is not supported by substantial evidence.

2. The ALJ erred in failing to find that the plaintiff also had severe impairments of post laminectomy syndrome with radiculopathy, chronic pain syndrome, obesity and depression[.]

3. The ALJ erred in the assessment of the plaintiff's residual functional capacity.

4. The ALJ erred by relying totally on the medical records for assessment for the plaintiff's RFC when the majority of the handwritten medical records were illegible.

(Pl.'s Br., ECF No. 13.)

## DISCUSSION

**A.     Severe Impairments**

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482



U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) 416.920(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

- (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
- (2) Capacities for seeing, hearing, and speaking;
- (3) Understanding, carrying out, and remembering simple instructions;
- (4) Use of judgment;
- (5) Responding appropriately to supervision, co-workers and usual work situations; and
- (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b). "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

As stated above, the ALJ found that Woodward's severe impairments were "status post cervical fusion with residuals, including pain and left upper extremity radiculopathy, hypertension and lower extremity swelling." (Tr. 20; see also Tr. 14.) The ALJ further found that Woodward failed to establish any other severe impairments and specifically rejected that Woodward's allegations of low back pain, hip pain, knee pain, shortness of breath, head pain, chest pain, depression, and dizziness constituted severe impairments. (Tr. 14-15.) Woodward argues that the ALJ erred in failing to find severe impairments of "Post Laminectomy syndrome (or failed back syndrome) that is a chronic pain syndrome, obesity and depression." (Pl.'s Br. at 19, ECF No. 13 at 19.)



**Post Laminectomy Syndrome/Chronic Pain Syndrome.** The crux of Woodward's first argument appears to be that the ALJ's finding that Woodward suffered from "status post cervical fusion with residuals, including pain and left upper extremity radiculopathy" was insufficient to account for Woodward's medical condition and cause the chronic pain he alleges. Woodward argues that the ALJ should have found that he suffered from the severe impairment of post laminectomy syndrome. In primary support of his position, Woodward argues that the ALJ erred in discounting his subjective complaints of chronic pain. Upon review of the record and the ALJ's decision, the court disagrees.

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the second step is at issue,[2] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." Id. "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and

---

[2] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

PJG

persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id.

In this case, substantial evidence supports the ALJ's finding that Woodward's complaints regarding the effects of his symptoms are inconsistent with the record. For example, the ALJ found that (1) although Woodward testified that Dr. Ekunsanmi instructed him to use a cane, the records did not indicate such an instruction or that a cane was medically necessary; (2) although Woodward testified that he slept in a recliner, the medical records did not indicate that he experienced chronic severe swelling that would require him to elevate his legs or that he reported such severe swelling such that it would impact his ability to perform basic work activities; (3) there is no indication in the records that Woodward reported, or that the medical providers found, that he could not sit for more than 45 minutes or stand for more than 15 minutes; and (4) the medical evidence did not demonstrate reports of chronic drowsiness or fatigue severe enough that he would be unable to perform any substantial gainful activity whatsoever and, in fact, the records showed that Woodward was no longer prescribed the medications that contributed to his drowsiness. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling" and indicating



that a diagnosis is insufficient to establish disability as "[t]here must be a showing of a related functional loss"); Flowers v. Apfel, 1999 WL 150491, *2 (4th Cir. 1999) (Table) (finding that a claimant's alleged limitations were not supported by the record when they were never reported to his treating physician). Accordingly, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

Based on the foregoing, the court finds that Woodward has failed to demonstrate that the ALJ erred in failing to find that Woodward suffered from a severe impairment of post laminectomy syndrome or chronic pain syndrome.

**Obesity.** Woodward next points out that while obesity has been removed from the Listings, the ALJ erred in failing to find it as a severe impairment. Woodward points out that his weight ranged between 230 and 250 pounds with a BMI between 35 and 39.99 and argues that obesity would likely worsen chronic pain from musculoskeletal problems. While Woodward may point to evidence that could demonstrate the existence of an impairment, he has failed to point to any evidence that he suffered from sufficient limitations or restrictions such that his obesity was a severe impairment. See 20 C.F.R. §§ 404.1520(c) 416.920(c); Evans, 734 F.2d at 1014; see also Gross, 785 F.2d at 1166 (indicating that a diagnosis is insufficient to establish disability as "[t]here must be a showing of a related functional loss").

**Depression.** Woodward argues that the ALJ's decision is not supported by substantial evidence because the treatment records of Dr. Bamidele A. Ekunsanmi, a primary care physician,

mentioned depression on three occasions rather than one[3] and because he ignored the findings of Dr. Delfin A. Vilate, who performed a psychiatric evaluation on March 9, 2007 diagnosing Woodward with severe depression (single episode), and the consultative evaluations of Dr. Donald W. Shuler and Dr. Vicky E. Kerr.

In evaluating Woodward's allegation of depression, the ALJ observed that (1) Woodward testified that he had received no mental health treatment; (2) recent records from the Good Samaritan Medical Clinic revealed "no complaint of depression whatsoever;" (3) the treatment records of Dr. Ekunsanmi revealed only one observation that Woodward appeared to be depressed; (4) despite the evaluations of Drs. Vilate, Shuler, and Kerr, "the state agency medical consultants most recently concluded that at worst [Woodward] had only mild limitations in activities of daily living, social functioning and concentration, persistence or pace stemming from depression or any other mental condition." (Tr. 14-15) (internal quotation marks omitted). Based on these findings and the fact that Woodward did not testify to any specific significant functional limitations caused by depression, the ALJ found that even if he suffered from medically determinable depression, it was not a severe impairment. (Tr. 15.)

While Woodward may disagree with the weight that the ALJ gave to the evaluations of the consultative examiners by giving more weight to the most recent examination and rejecting the others, and point out that Dr. Ekunsanmi's treatment records mentioned depression on two other occasions, the court finds that Woodward has failed to demonstrate that the ALJ's finding that Woodward's depression is not a severe impairment is unsupported by substantial evidence.

---

[3] The parties appear to agree that Dr. Ekunsanmi's medical records are illegible.

Moreover, even if the ALJ erred in failing to find any of these impairments were severe, Woodward has failed to demonstrate that these impairments resulted in additional functional limitations than those found by the ALJ in assessing Woodward's residual functional capacity. Therefore, the court finds that to the extent the ALJ erred, such error was harmless. See Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009) (stating that a party attacking an agency determination bears the burden of showing that an error was harmful); Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (internal quotation marks and citations omitted); Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).

**B.     Residual Functional Capacity**

The ALJ found that Woodward retained the residual functional capacity ("RFC")

> to perform simple, routine, repetitive "light" work that accommodates limited use of his left arm, that does not require more than occasional bending or stooping, that does not require[] exposure to hazardous working conditions such as unprotected heights, and that does not require exposure to excessive dust or fumes. I find that the claimant has not met his burden of establishing that he is unable to perform other work functions, including standing, sitting, or walking for 6 to 8 hours in work day, frequently lifting and carrying as much as 10 pounds, occasionally lifting and carrying as much as 20 pounds, meeting other physical non-exertional requirements of work and meeting the mental demands of unskilled work, including performance of the simple, routine, repetitive tasks associated with such work.

(Tr. 17-18.) In reaching this conclusion, the ALJ specifically noted that in formulating Woodward's RFC he accounted for Woodward's allegations that Woodward experiences a degree of drowsiness

related to medication side effects and that he experiences shortness of breath, as well as his obesity and the lack of functional limitations attributable to it.

Woodward argues that the ALJ erred in determining his RFC by failing to address how it would be affected by his chronic pain and lower extremity swelling. Woodward asserts that an individual with lower extremity swelling and obesity who testified that he must elevate his legs due to swelling could not perform light work. Further, Woodward argues that the RFC assessment is not supported by substantial evidence because much of Dr. Ekunsanmi's treatment records are illegible.

In evaluating Woodward's lower extremity swelling, the ALJ found that

> there is no indication in the medical evidence that the claimant reported that he experienced chronic severe swelling of his low extremities such that he had to elevate his legs, nor is there any indication that he reported that any swelling he experienced was of such severity as to significantly impact his ability to perform basic work related tasks such as sitting, standing or walking. In fact, in that regard, at the hearing the claimant did not testify that his ability to stand or walk was significantly impacted by lower extremity swelling. Also, although the claimant testified that he could not sit for more that 45 minutes or stand for more than 15 minutes, there is no indication in the medical evidence that he reported such significant functional limitations to his treating physicians. It would be reasonable to expect that if the claimant was in fact so limited, he would report those limitations. Yet, he did not. It would also be reasonable to expect that if the claimant was so limited, his treating physicians would observe and record manifestations of those limitations, whether the claimant reported or not. Yet, they did not.

(Tr. 15-16.) Further, the ALJ stated that Woodward's obesity may contribute to an inability to perform strenuous activities and limited his lifting; however, he found there was no evidentiary support, either in the medical records or in Woodward's testimony, that his obesity would cause significant functional limitations. Woodward has failed to demonstrate that these findings are unsupported. Cf. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991) (stating that claimant's allegation that he had to recline or lie down several times a day was not sustained by the evidence in part because no physician suggested that the claimant's condition required such reclining).

Finally, with regard to Woodward's argument that the RFC analysis is unsupported by substantial evidence because much of Dr. Ekunsanmi's treatment notes are illegible, the court finds that reversal is not warranted on this ground. As pointed out by the Commissioner, while Dr. Ekunsanmi treated Woodward from March 2005 to April 2007, the treatment was sporadic and the treatment records represent a small portion of the medical record in this matter, approximately ten pages. (Def.'s Br. at 13, ECF No. 16 at 13; Tr. 279-82, 350-56.) Woodward's speculation as to what the illegible portions may indicate do not render this decision unsupported. Further, the court observes that this is the first time this issue has been presented, even though Woodward was represented by counsel at his hearing before the ALJ and no new submissions explaining Dr. Ekunsanmi's notes were presented to the Appeals Council. Accordingly, Woodward has failed to demonstrate that clarification of Dr. Ekunsanmi's treatment notes would have rendered this opinion unsupported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, the court finds that Woodward has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 27, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).